**LUTHER COMPTON & SONS, INC.,**
a corporation, Plaintiff,

v.

**COMMUNITY NATIONAL LIFE INSURANCE COMPANY,** a corporation,
Defendant.

No. 68–C–10.

United States District Court
N. D. Oklahoma.

Dec. 11, 1969.

See also, D.C., 294 F.Supp. 85.

F. Paul Thieman, Jr., Tulsa, Okl., for plaintiff.

Boone, Ellison & Smith, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiff sues herein under diversity jurisdiction on a final judgment entered by a state court in Virginia in its favor against the Defendant. 28 U.S.C. § 1332; U.S.Const., Art. 4, § 1. Defendant opposes the suit with the contention that the Virginia court lacked jurisdiction over it when the judgment was entered. This is a valid defense if established. 47 Am.Jur.2d, Judgments, Section 1254, page 249 et seq.

The evidence reveals that the Defendant is an Oklahoma corporation engaged in the insurance business with its home office in Tulsa, Oklahoma. It was licensed to do business in Tennessee but not in Virginia. A representative of Defendant called on R. L. Gurley, an insurance man in Bristol, Tennessee, suggested that he place some sub-standard insurance risks with Defendant and left him certain Company insurance forms for this purpose.

On or about July 12, 1966, Gurley took an insurance application from Luther Compton in Virginia. The application shows on its face that Compton is a resident of Virginia. The application was sent to the Defendant. The Defendant evinced an interest in the risk and re-

quested a medical examination of Compton. Gurley went to Virginia and arranged for a medical examination of Compton by a Virginia doctor. Compton was examined on October 29, 1966. Apparently the Defendant paid the medical examination fee. Gurley picked up the doctor's medical report in Virginia and mailed same to the Defendant with a second insurance application obtained from Compton in Virginia. On November 11, 1966, the Defendant issued the policy with only the July 12, 1966 application attached. It was mailed to Gurley. The second application was not offered in evidence. Gurley went to Virginia and delivered the policy to Compton. He also attempted to collect the initial premium from Compton. However, Compton wanted a week to check the policy and the rate charged by Defendant. Compton did not pay the initial premium, but Gurley left the policy with him at this time. A week later or on or about November 23, 1966, Gurley again went to Virginia and obtained from Compton his check for the first premium. Gurley mailed the check to the Defendant. On this visit Compton indicated a desire to change the beneficiary and ownership of the policy as it had been written. The policy was

given to Gurley for this purpose. He took the same to Tennessee, made a request for the changes to Defendant by mail and returned the policy to Compton in Virginia apparently by mail. Defendant made the requested changes and mailed the beneficiary and ownership change endorsements direct to Compton in Bluefield, Virginia, on November 29, 1966, requesting that he attach the same to his policy. Thereafter, on or about November 30, 1966, Defendant sent a telegram to Compton claiming that the policy was issued in error and is void by reason of Defendant's not being licensed to do business in Virginia. On or about the same date, the Defendant mailed the check of Compton for the first premium to Gurley with the request that he return the same and obtain the policy. Gurley went to Virginia, presented the check and requested the policy. Both requests were refused.

Following the death of Compton in Virginia on or about December 10, 1966, the Virginia action was filed by the Plaintiff herein against the Defendant to recover the benefits under the policy, the Plaintiff being the beneficiary named in the policy at time of death. Service was obtained on the Defendant under Virginia "long arm" statutes [1] by serving

1. It is stipulated that service of process was obtained upon the Defendant in compliance with the following statutes and laws of the State of Virginia:

Article 8, Section 38.1–64:

"Any of the following acts in this State hereafter effected by mail or otherwise, by a foreign or alien insurance company not authorized to do business in this State, namely: (1) The issuance or delivery of contracts of insurance to residents of this State or to corporations authorized to do business therein, (2) the solicitation of applications for such contracts, (3) the collection of premiums, membership fees, assessments or other considerations for such contracts or (4) the transactions of any other insurance business in connection with such contracts, is equivalent to and shall constitute an appointment by such company of the clerk of the Commission as its agent for the service of process in ac-

cordance with § 13.1–119 of this Code."

Section 13.1–119:

"No foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority. No foreign corporation which is in default under the requirement that amendments to its articles of incorporation or instruments of merger or consolidation shall within thirty days be filed in the office of the Commission shall be permitted to maintain any action, suit or proceeding in any court of this State until such corporation shall have filed in the office of the Commission a copy of such amendments or instruments of merger or consolidation authenticated as aforesaid.

"The failure of a foreign corporation to obtain a certificate of authority to

the Clerk of the Corporation Commission of Virginia who mailed notice of the suit to the Defendant in Oklahoma by registered mail, the proper affidavit of mailing and the return receipt of Defendant being filed in the Virginia case.

The Defendant concedes that the Virginia statute under which service was made against the Defendant in the Virginia action was followed in all respects but urges, first, that the statute is unconstitutional, and second, if constitutional, that Defendant had no contacts with or in the State of Virginia regarding the insurance policy and, thus, was not subject to the jurisdiction of the Virginia courts by "long arm" type service in Oklahoma.

█ As to the constitutionality of the Missouri "long arm" statutes used and followed in the Virginia action, the same clearly meet the due process requirements of Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). They do not possess the fatal omission found in Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928). The requirements for mailing notice of suit to Defendant with return receipt prescribed by the Virginia statutes afforded reasonable probability that the notice would be communicated to Defendant and that Defendant would receive actual notice of the suit which, in fact, it did. Defendant's first contention is without merit.[2]

In McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a California resident bought a life insurance policy from an Arizona insurance company which was later merged with a Texas insurance company which Texas company mailed to the insured in California a certificate of reinsurance and thereafter mailed premium notices to the California insured which were paid by the insured by mail to the Texas company. Upon the death of the insured, suit was brought on the policy in California by the beneficiary with process served on the Texas company under a California

---

transact business in this State shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this State.

"If a foreign corporation transacts business in this State without a certificate of authority, its directors, officers and agents doing such business shall be jointly and severally liable for any contracts made or to be performed in this State and any torts committed in this State between the time when it began to transact business in this State and the date when it obtains a certificate of authority. Suits, actions and proceedings may be begun against it by serving process on any such director, officer or agent of the corporation, or, if none can be found, on the clerk of the Commission. If any foreign corporation shall transact business in this State without a certificate of authority, it shall by transacting such business be deemed to have thereby appointed the clerk of the Commission its attorney for service of process. Service shall be made by leaving two copies of the process, notice, order or demand, together with the fee required by law, in the office of the clerk of the Commission, together with an affidavit giving the latest known post office address of the defendant and such service shall be sufficient if notice of such service and a copy of the process, notice, order or demand are forthwith sent by registered mail, with return receipt requested, by the clerk of the Commission or one of his staff to the defendant at the specified address. An affidavit by the clerk of the Commission showing compliance herewith shall be filed with the papers in the suit, action or proceeding.

"If a foreign corporation transacts business in this State without a certificate of authority, each officer, director and agent who does any such business in this State shall be liable to a penalty of not less than one hundred dollars or more than one thousand dollars to be imposed by the Commission after notice and opportunity to be heard, both to the corporation and to the individual."

2. Defendant made this contention at the trial, but concedes the constitutionality of the statutes in its brief.

"long arm" statute with mailing requirements to the Defendant meeting the requirements of due process. A California judgment was obtained on such service and suit was then brought on the California judgment in Texas. Texas denied relief on the ground that the California judgment was void for lack of service on the Defendant within California. The United States Supreme Court reversed holding that the suit in California was based on a contract which had substantial connection with California and that the requirements of due process were satisfied. We, therefore, must consider in the case before this Court if the insurance contract sued on in Virginia had substantial connections with Virginia which are chargeable to Defendant.

██ The evidence in the case before the Court reveals that Gurley did not have an agency contract with the Defendant. When the Defendant issued a policy on an application forwarded to it by Gurley, it would send Gurley a single case commission agreement. Gurley would receive his commission on the transaction from the Defendant under this agreement on a case-by-case basis. We, thus, have a situation in which Gurley is properly characterized as a broker of insurance as far as the Defendant is concerned. This relationship between Gurley and Defendant becomes important as with the exception of mailing the said endorsements direct to Compton in Bluefield, Virginia, the Defendant had no contacts with Compton in Virginia except through Gurley. As Defendant is a corporation and can only do business by agents, servants and employees, the question is presented as to what activities of Gurley in Virginia in connection with the Compton insurance policy (the subject of the Virginia action) were the activities of Defendant as distinguished from being those of Gurley for himself or on behalf of Compton. For the Virginia court to have had jurisdiction over the Defendant in the Virginia action, it is necessary that the Defendant by its agents in Tulsa and/or by and through Gurley had substantial connections in the state regarding the Compton insurance policy.

43 Am.Jur.2d, Insurance, Section 149, page 203 states:

"Whether an insurance broker represents the insurer or the insured is a question which cannot be answered absolutely, but which depends upon the circumstances of the particular case. Under certain circumstances and for certain purposes, an insurance broker may represent either the insured or the insurer, or both. The question is one of fact to be determined from the evidence."

And at pages 204–205 this text states:

"Under some statutes and for some purposes, an insurance broker may be the agent of the insurer. He may, for example, be the agent of the insurer for the purpose of delivering the policy and collecting the premiums, or for the collection of the premiums only. Of course, an insurance broker may be employed by the insurance company as its agent. Moreover, it has been held that where a person applies to an insurance broker for an insurance policy and the latter offers the business to an insurance company which accepts it and issues a policy, it is not an unjustifiable inference that the broker is the insurer's agent in respect to further transactions pertinent to the policy."

By statute Virginia makes an insurance broker under the circumstances of this case the agent of the insurer. Title 38, Section 38.1–292 of the Code of Virginia provides:

"A person who is authorized by any company to solicit insurance or applications therefor shall, in any controversy between the insured or his beneficiary and the company, be held to be the agent of the company which issued the insurance solicited or applied for, anything in the application or the policy to the contrary notwithstanding."

It is the finding and conclusion of the Court that the Defendant had the required substantial connections in Virginia with reference to the Compton insurance contract. This is based on Gurley doing at least four substantial acts in Virginia regarding the Compton policy for and on behalf of the Defendant and as its agent or representative. These were, first, arranging the medical examination of Compton in Virginia at the request and for the benefit of the Defendant, second, delivering the policy to Compton in Virginia and attempting to collect the initial premium thereon for and at the request of Defendant, third, thereafter collecting the initial premium for the benefit of Defendant and, fourth, attempting to return the initial premium check to Compton and obtain from Compton the insurance policy both done in the State of Virginia at the request of Defendant. It is significant that all of the above acts were done by Gurley at the direction of Defendant and after Defendant was charged with knowledge that Compton resided in Virginia.

The Court, therefore, finds and concludes that the Defendant had substantial connections in the State of Virginia with reference to the Compton insurance policy which was the subject matter of the Virginia action resulting in a final judgment which the Plaintiff herein desires to be made by this suit a judgment in the State of Oklahoma. The Court also finds and concludes that the Virginia "long arm" statutes under which service was had in the Virginia action against the Defendant in Oklahoma were valid and constitutional statutes and that the required procedure thereunder was followed by the Plaintiff in the Virginia action. The result of the foregoing findings and conclusions is that the Virginia court had jurisdiction over the Defendant in the Virginia action when it rendered the judgment involved. Such being the case, Plaintiff is entitled under the full faith and credit provisions of the federal Constitution to have its Virginia judgment recognized in Oklahoma which is the relief requested by this proceeding.

Plaintiff is, therefore, entitled to have judgment herein for the relief requested in its Complaint. Counsel for Plaintiff will prepare an appropriate judgment based on the foregoing and present the same to the Court for signature and entry herein.

